```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
     v.                         )    No. 4:07 CR 582 RWS
                                )                    DDN
GINA MORRISON,                  )
                                )
          Defendant.            )
```

### ORDER AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on January 23 and February 8, 2008.

### 1. **Pretrial disclosure of evidence**

Defendant Gina Morrison has moved for discovery and inspection of several categories of items and information under Federal Rule of Criminal Procedure 16 (Doc. 68). The motion will be denied without prejudice. While the items sought by defendant may be relevant and discoverable, the motion did not certify that counsel conferred with the prosecutor about the items raised in the motion, that there is a good faith belief that the items exist, and that their disclosure has been refused by the government. (Doc. 61 at 2.)

### 2. **Motion to suppress evidence**

Defendant has moved to suppress evidence. (Doc. 71 and oral motion filed December 18, 2007). The government has moved for a determination by the court of the admissibility or not of any arguably suppressible evidence (oral motion filed December 18, 2007).

From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

<u>Evidence obtained on September 11, 2007</u>

  1. In September 2007, Lincoln County, Missouri, Sheriff's Office Detectives Jordan Wicks and Brian Wideman, with information provided by confidential informants (CI), investigated Ralph Anthony Knox, also known as "Tony" and "TK", for narcotics law violations. On September 10, 2007, one CI gave Det. Wicks information about activities at Knox's residence in Lincoln County.

  2. On September 11, 2007, Lincoln County Det. Brian Wideman submitted his written affidavit in support of his application for a search warrant to search Knox's residence at 3 Paul Drive in Troy, Missouri, for methamphetamine and related items. Det. Wideman signed his affidavit under oath before Candice M. Sitze, a Missouri notary public.[1] Gov. Ex. 2 at 1 (Jan. 23, 2008). The sworn affidavit was submitted to Associate Circuit Judge Amy J. Kinker.

  3. The affidavit identified the place to be searched as "3 Paul Drive, Troy, Missouri . . . [consisting] of one brown single-wide mobile home with white trim and shutters, with the front door facing to the approximate north . . . [with] an enclosed porch on the front of the residence." The affidavit recounted information provided to Det. Wideman by two confidential informants, identified in the affidavit as C.I. 07-16 and C.I. 11-07, whom he believed were "truthful and reliable because I have been able to confirm much of the informant's [sic] information through information obtained from other witnesses and police department contacts." Det. Wideman also stated,

> Additionally, I believe the information obtained from these informants is reliable because substantial portions of the information could only have been known by coconspirators of the Knox drug organization, such as methods of operation, customers of the conspiracy, telephone and pager numbers used by coconspirators. Finally, I believe the informants are reliable because I interviewed each informant separately, and their information was largely consistent with each other.

---

[1]Under Missouri law, notary public officials are authorized to administer oaths and affirmations. <u>See</u> Mo. Rev. Stat. § 486.250(2)(2000).

Gov. Ex. 2 at 1 (Jan. 23, 2008).[2] The affidavit recounted one informant's statement that the CI had been inside 3 Paul Drive and observed Gina Morrison possess a large number of pseudoephedrine pills and make statements about getting more. This CI also stated that Knox completes the methamphetamine manufacturing process in his residence. This CI also described the security cameras that Knox placed around his residence, where he hides narcotics in the residence, and where and how he disposes of leftover chemicals and containers. Finally, the affidavit stated that, as recently as 1:00 a.m. on September 11, investigating officers saw vehicles belonging to Gina Morrison, Ralph Knox, and Clay Wallace at the residence. Gov. Ex. 2 (Jan. 23, 2008).

4. When the affidavit was submitted to the court, Det. Wicks discussed with Judge Kinker the officers' efforts to determine the most accurate identification and description of the specific trailer home that was Knox's residence. She was told that the officers' investigation indicated that the 6-trailer area of the trailer park (containing a total of about 30 trailers) in which Knox's residence was situated bore an address of 3 Paul Drive. The judge was told that Det. David Lingle had personally observed Knox's trailer on September 10 and that the officers believed its identification and description in the affidavit and the proposed warrant were accurate.

5. At 2:15 a.m. on September 11, 2007, Judge Kinker issued a search warrant for the location described as "3 Paul Drive, Troy, Missouri . . . [consisting] of one brown single-wide mobile home with white trim and shutters, with the front door facing to the approximate north . . . [with] an enclosed porch on the front of the residence." The warrant commanded a search for "methamphetamine, methamphetamine precursors, pseudoephedrine, drug paraphernalia, currency, documents, and any items aiding in the packaging, manufacturing and distribution of methamphetamine." Gov. Ex. 3 (Jan. 23, 2008).

---

[2]In the affidavit, Det. Wideman refers to specific information provided by C.I. 07-16. No reference is made to any specific information provided by C.I. 11-07. However, the very top of the second page of the affidavit, Government Exhibit 2, apparently containing the beginning portion of paragraph 8 of the affidavit, was not reproduced in the copy of the affidavit provided to the court.

6. The search warrant was executed at approximately 3:30 a.m. on September 11, 2007. Shortly after they entered the premises, the officers saw that the correct address of the Knox trailer was 10 Paul Drive, not 3 Paul Drive. The officers entered the trailer and found and seized, from a hidden compartment in a bedroom, appliances and components of an inactive laboratory for manufacturing methamphetamine, and items that had been used in the prior manufacturing of methamphetamine. Similar items were seized from other parts of the residence, including another bedroom, the laundry room, the kitchen, and the living room.

7. During the search, the officers saw that there was an outbuilding on the premises of the residence. They decided to apply for another search warrant for this structure. The application for the second warrant was supported by the written affidavit of Det. Wicks, signed under oath before Notary Public Zitze. Gov. Exh. 5 (Jan. 23, 2000). In his affidavit, Det. Wicks recounted the execution of the search warrant, the observation of an inactive methamphetamine laboratory inside the residence, the location of a "burn barrel" outside the residence in which the officers found items relating to the manufacture of methamphetamine, and the location of the subject outbuilding about twenty feet from the burn barrel. The affidavit stated that a strong chemical odor emitted from the outbuilding exhaust fan, which indicated that the outbuilding was used for the manufacture of methamphetamine. The affidavit described the residence as 10 Paul Drive and specifically described the outbuilding. Id.

8. Thereafter, based upon the affidavit of Det. Wicks, Judge Kinker issued a search warrant for the Knox residence, now described as 10 Paul Drive, and the outbuilding which was specifically described. The warrant authorized a search for "methamphetamine, methamphetamine precursors, pseudoephedrine, drug paraphernalia, currency, documents, and any items aiding in the packaging, manufacturing and distribution of methamphetamine." Gov. Ex. 6 (Jan. 23, 2008).

9. After the second warrant was issued, the officers searched the outbuilding and found and seized many pseudoephedrine pills, a bag

of crushed pseudoephedrine pills and materials for manufacturing methamphetamine.

## Evidence obtained on October 14, 2007

10. During the week of October 10, 2007, Warren County Sheriff's Office Det. Chad Fitzgerald received information about drug activities at 27091 Roelker Road in Wright City, Missouri. Det. Fitzgerald was familiar with that location, having executed two search warrants there in the past. During the morning of October 11, Det. Fitzgerald prepared a written affidavit for a search warrant. The affidavit stated that the location was the residence of Richard Rodriquez and Gina Morrison. The affidavit stated that on October 10, Det. Fitzgerald was contacted by Det. Deric Dull who advised he had received information from a woman, (named in the affidavit)[3] whom Dull had arrested, who said she bought materials for Gina Morrison in exchange for methamphetamine. The affidavit stated that Dull overheard a telephone conversation between his informant and Morrison in which Morrison said the woman should bring the materials to Morrison's boyfriend Ricky's house and that she would have something for her. Dull drove the woman to where she pointed out Ricky's residence and the female informant said that that was where she had previously delivered methamphetamine precursors in exchange for methamphetamine. The affidavit stated that Det. Fitzgerald investigated and confirmed the location of Rodriquez's residence at 27091 Roelker Road. The affidavit stated that named officers drove by this location twice but could not locate an address on the residence or see a license plate number on any vehicle in the area. On each occasion, however, the officers smelled a chemical odor that, from their experience, they recognized as related to the manufacture of methamphetamine. The affidavit stated that on two occasions on October 11 officers saw a green pickup truck previously associated with Gina Morrison on the premises of 27091 Roelker Road. Det. Fitzgerald signed the written affidavit before a Warren County Associate Circuit Judge. Gov. Ex. 1

---

[3]The name of the informant was blacked out on the copy of the affidavit received in evidence at the hearing on February 8, 2008, Government Exhibit 1 (Feb. 8, 2008).

(Feb. 8, 2008). When the affidavit was presented to the judge the informant's name was not blacked out, but was provided to the judge. Upon this sworn affidavit the judge issued the search warrant at 1:20 p.m. As the places to be searched, the warrant included the subject residence; outbuildings; vehicles, including a green, specifically identified pickup truck; and the persons of Rodriguez and Morrison. The search warrant authorized the "seizure of illegal narcotics, currency obtained as a result of illegal activity, firearms, and any other evidence of criminal activity that would be furthered by illegal narcotics activity." Gov. Ex. 3 (Feb. 8, 2008).

11. The officers executed the search warrant for 27091 Roelker Road at approximately 2:15 a.m. on October 14. When the officers entered the residence, they first secured it. They found Richard Rodriquez and Gina Morrison in bed in the master bedroom. They detained them along with Morrison's mother, and a 16-year-old female and her infant, who were also present.

12. When all of the occupants, including Morrison, were together in one place, Det. Fitzgerald orally read them their <u>Miranda</u> rights.

13. After the rights were read, Fitzgerald asked the occupants for their identification. Morrison said her identification was in her purse in her bedroom. Fitzgerald went into the bedroom and found the purse. Det. Fitzgerald then asked her whether the purse he found was hers and Morrison answered in the affirmative. He opened the purse and found and seized drug paraphernalia from it.

14. From other parts of the residence the officers found and seized two digital scales (from the bathroom), a glass pipe, and a bag of blue pills and white powder. From the outbuilding shed, the officers seized many methamphetamine chemical precursors and marijuana. <u>See</u> Gov. Ex. 4 (Feb. 8, 2008).

15. The police asked Morrison whether the green pickup truck was hers. She said it belonged to her mother, but that she drives it. From the vehicle, the officers seized cans of Coleman fuel because the fuel was known to be a methamphetamine precursor chemical.

**DISCUSSION**

## Evidence obtained on September 11, 2007

Defendant argues that the physical evidence obtained on September 11, 2007, should be suppressed. The undersigned disagrees.

To begin, the government argued at the hearing that defendant Morrison never established that she has standing to complain about the seizure of evidence on September 11 from the Paul Drive address. The undersigned agrees. Standing to complain about the seizure of evidence under the Fourth Amendment requires that the person establish that she has a legitimate expectation of privacy in the place searched. <u>Rakas v. Illinois</u>, 439 U.S. 128, 134 (1978); <u>United States v. Stallings</u>, 28 F.3d 58, 60 (8th Cir. 1994).

> Fourth Amendment rights are personal and cannot be asserted vicariously. See <u>United States v. Gomez</u>, 16 F.3d 254, 256 (8th Cir.1994). A defendant who "fails to prove a sufficiently close connection to the relevant places or objects searched . . . has no standing to claim that they were searched or seized illegally." <u>Id.</u> A defendant moving to suppress evidence has the burden of showing a legitimate expectation of privacy in the area searched. See <u>id.</u> "Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." <u>Id.</u>

<u>United States v. Pierson</u>, 219 F.3d 803, 806 (8th Cir. 2000). Defendant Morrison was not shown by the evidence to have been present at the Paul Drive residence when either of the search warrants were executed and evidence seized, and no other legally sufficient basis for her constitutional standing to complain has been shown by the record or asserted by her other than the fact that the government intends to offer the seized evidence against her at trial. Without more, such does not establish her standing to seek suppression of the evidence.

Even assuming defendant has standing, the evidence seized on September 11 should not be suppressed. The search warrants executed on September 11 were lawfully issued. When it reviews the legal sufficiency of the basis for the issuance of a search warrant, this reviewing court must decide whether the issuing judge had a substantial

basis for concluding that probable cause existed for the issuance of the warrant. Illinois v. Gates, 462 U.S. 213, 238-39 (1983); United States v. McCoy, 483 F.3d 862, 863 (8th Cir. 2007).

In this case the first affidavit presented Judge Kinker with a substantial basis for finding probable cause to believe that methamphetamine and related items would be found at the location identified as 3 Paul Drive. The eyewitness information from a confidential informant can provide a substantial basis for the issuance of a search warrant, if the informant was shown to be reliable in the search warrant affidavit. United States v. Littrell, 439 F.3d 875, 881 (8th Cir. 2006), cert. denied, 127 S. Ct. 331 (2006). In his affidavit, Det. Wideman went to some length to explain the reliability of the informant: He confirmed much of the informants' information by comparing the information from the two informants and found them consistent, by considering the specific drug-involvement nature of the information which included the involvement of Gina Morrison and Ralph Knox, and by considering the information provided by other persons, including police officers who saw that Knox's and Morrison's vehicles were located at the place to be searched.

Defendant points out that the place to be searched was not correctly identified in the first warrant. The affidavit and search warrant identified the place as 3 Paul Drive, when the correct address turned out to be 10 Paul Drive. This mistake does not require that the evidence seized be suppressed. While the place may have been identifiable by more informed persons at the time the warrant was issued as 10 Paul Drive, it was also described with particularity as a "brown single-wide mobile home with white trim and shutters, with the front door facing to the approximate north . . . [with] an enclosed porch on the front of the residence." No evidence was presented to the court at the hearing that, aside from the specific street address and aside from the personal observation of the residence by two officers, the subject mobile trailer residence was not correctly identified or specifically identified sufficiently for the officers to correctly select it for the execution of the warrant. See Lyons v. Robinson, 783 F.2d 737, 738 (8th Cir. 1985) (per curiam) (incorrect address on warrant did not require

suppression, where warrant otherwise provided correct specific description of premises to be searched and the risk of a mistaken search was unlikely).

Defendant's argument about the evidence seized in the execution of the second search warrant is premised upon the asserted illegality of the issuance of the first one. Because the first one was issued in accordance with the requirements of the Fourth Amendment, the undersigned concludes that the evidence seized from the outbuilding should not be suppressed. In any event, the information set forth in Det. Wicks's affidavit provided a substantial basis for the issuing judge's conclusion that probable cause existed to search the outbuilding. The affidavit described the officers' firsthand observation of the strong chemical odor emanating from the outbuilding, their description of the contraband items seized pursuant to the first warrant, and the correct identification of the location by address and type of building.

The evidence seized on September 11, 2007, should not be suppressed.

### Evidence obtained on October 14, 2007

Defendant argues that the search warrant issued on October 11, 2007, was improperly issued because the showing of probable cause in the affidavit did not provide information to the issuing judge that the informant was reliable.

As noted above, for a warrant to issue properly under the Fourth Amendment, the warrant must be supported by probable cause. Gates, 462 U.S. at 238-39; United States v. Caswell, 436 F.3d 894, 897 (8th Cir. 2006). Probable cause exists, if under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238-39. In deciding whether there is probable cause to support a warrant, a judge may draw reasonable inferences from the totality of the circumstances. United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007), cert denied, 128 S. Ct. 875 (2008). To establish probable cause, an officer may rely on an informant's tip. Caswell, 436 F.3d at 898.

When an informant has provided reliable information in the past, or where the informant's tip has been independently corroborated, a court can deem the informant's tip sufficiently reliable to support a probable cause determination. Id. "When an informant's information is at least partly corroborated . . . attacks upon credibility and reliability are not crucial to the finding of probable cause." Id.

In this case, the informant's information was independently corroborated, providing the necessary probable cause to support issuance of the search warrant. During the week of October 10, 2007, Det. Fitzgerald received information regarding drug activities at 27091 Roelker Road. Specifically, the informant stated that she had bought materials for Gina Morrison and delivered methamphetamine precursors to 27091 Roelker Road, in exchange for methamphetamine. On two occasions, officers drove by 27091 Roelker Road and smelled a chemical odor associated with the manufacture of methamphetamine. See United States v. Clayton, 210 F.3d 841, 845 (8th Cir. 2000) ("Once inside the house, [the officer] quickly developed probable cause for a search based on his immediate perception of an odor associated with methamphetamine production."). On each occasion, the officers also saw a green pickup truck, which they had previously associated with Gina Morrison. Looking to the totality of the circumstances, and considering the presence of a chemical odor associated with the manufacture of methamphetamine and the presence of the green pickup truck, linked to Gina Morrison, there was a fair probability that contraband or evidence of a crime would be found at 27091 Roelker Road. Since the informant's information was independently corroborated, under Caswell, the informant's reliability was not crucial to the probable cause determination. Caswell, 436 F.3d at 898.

Defendant also objects to the search of the contents of her purse, arguing the search of her purse fell outside the scope of the warrant. In response, the government argues that the search warrant's authorization to search the residence included the authority to search all containers in the residence, including defendant's purse.

A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found. United States v.

Ross, 456 U.S. 798, 820-21 (1982). A lawful search is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Id. "Thus, a warrant that authorizes an officer to search a home for [contraband] also provides authority to open closets, chests, drawers, and containers in which the [contraband] might be found." Id. at 821. In the course of a lawful search, nice distinctions between closets, drawers, and containers must give way to the interest in the prompt and efficient completion of the task at hand. Id.

A woman's purse, not in her possession, may be considered a household container, falling within the scope of a search warrant. See United States v. Myers, 198 F.3d 248, 1999 WL 1073671, at *2 (6th Cir. 1999) (unpublished); United States v. Martinez-Zayas, 857 F.2d 122, 133 (3d Cir. 1988); United States v. Teller, 397 F.2d 494, 497 (7th Cir. 1968). In Myers, the officer obtained a search warrant to search the Myers' home for methamphetamine and items related to its manufacture. Myers, 1999 WL 1073671, at *1. In executing the warrant, the officer searched the wife's purse, and found drug records. Id. Myers moved to suppress the items taken from her purse. Id. But because the "purse was located in the laboratory area [of the home] and was capable of containing items specified in the warrant, the search of the purse was authorized by the warrant." Id. at *2. Indeed, where the defendant's purse was lying on the bed, not in her possession, it "was merely another household item subject to the lawful execution of the search warrant which the federal agents held and were enforcing." Teller, 397 F.2d at 497; see also Martinez-Zayas, 857 F.2d at 133 (upholding search of woman's purse to confirm her identity and to determine whether the purse contained any items identified in the warrant).

In this case, the search warrant authorized a search of 27091 Roelker Road and a search of Morrison's person. The search warrant also authorized the seizure of narcotics and items related to illegal narcotics activity. Det. Fitzgerald found Morrison's purse in the residence and confirmed it was her purse before searching it. Looking to Myers and Teller, the search of Morrison's purse was within the scope

of the search warrant. Det. Fitzgerald lawfully seized the items from Morrison's purse.

The evidence seized on October 14, 2007, should not be suppressed.

Finally, defendant moves to suppress her statements. To safeguard an individual's Fifth Amendment rights, a suspect in custody must be warned before being interrogated that she has the right to remain silent and that any statement she makes may be used against her. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Statements made after a knowing and voluntary waiver of Miranda rights are admissible unless there were earlier, unwarned statements resulting from coercion or a calculated effort to undermine the suspect's free will. United States v. Briones, 390 F.3d 610, 614 (8th Cir. 2004).

In this case, Det. Fitzgerald orally advised defendant of her Miranda rights. After being read her Miranda rights, defendant responded to the officers' questions and made statements. These responses constituted a waiver of her rights. See North Carolina v. Butler, 441 U.S. 369, 372-76 (1979). At the time of the waiver, Morrison was not the subject of any duress, coercion, or threat of punishment. Her statements were made voluntarily and responsively, and were not induced by any improper government action. See United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc). Accordingly, defendant's statements may be used against her without violating her Fifth Amendment rights. Defendant's statements should not be suppressed.

Whereupon,

**IT IS HEREBY ORDERED** that the motion of the government for a determination by the court of arguably suppressible evidence (oral motion filed December 18, 2007) is denied as moot.

**IT IS FURTHER ORDERED** that the motion of defendant for discovery and inspection under Rule 16 (Doc. 68) is denied without prejudice.

**IT IS HEREBY RECOMMENDED** that the motions of defendant to suppress evidence (Doc. 71 and oral motion filed December 18, 2007) be denied.

The parties are advised they have ten days to file timely, the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the

timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first. written objections to this Order and Recommendation.  The failure to file objections may result in a waiver of the right to appeal issues of fact.

### ORDER SETTING TRIAL DATE

As directed by the District Judge, this matter is set for a jury trial on the docket commencing April 7, 2008 at 9:00 a.m.

                                        /S/ David D. Noce
                                  **UNITED STATES MAGISTRATE JUDGE**

Signed on February 15, 2008.